FILED

2011 Aug-09  PM 06:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

Klari Bauer Tedrow
Attorney at Law
Bar Number: ASB-5015-W81K
4 Office Park Cir, Suite 214
Birmingham, AL 35223-2538
Tel: (205) 871-8084
Fax: (205) 871-8014
E-mail: ktedrow@usimmigrant.net

Steven P. Rice*
Thy B. Bui*
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614
Tel: (949) 263-8400
Fax: (949) 263-8414
E-mail: srice@crowell.com
        tbui@crowell.com

*Attorneys for Amicus Curiae*
ALABAMA COALITION AGAINST DOMESTIC VIOLENCE
* Admitted *Pro hac vice*

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | |
|---|---|
| HISPANIC INTEREST COALITION OF ALABAMA, *et al*.<br><br>Plaintiffs,<br><br>v.<br><br>GOVERNOR ROBERT BENTLEY, *et al*.<br><br>Defendants. | Case No. 5:11-cv-02484-SLB<br><br>**ALABAMA COALITION AGAINST DOMESTIC VIOLENCE'S *AMICUS CURIAE* BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

# TABLE OF CONTENTS

**Page**

INTEREST OF AMICUS CURIAE ........................................................................1

INTRODUCTION .................................................................................................2

ARGUMENT .......................................................................................................7

    I.    Immigrant Women Face Particular Challenges That Make Them Uniquely Susceptible To Crime And Other Abuse. .................7

    II.    HB 56 Undermines Federal Protections For Immigrants Who Are Victims Of Crime. ...................................................................11

        A.    HB 56 Will Lead To The Detention And Removal Of Immigrant Women With Pending Applications For Legal Immigration Status Under VAWA And TVPA......................14

        B.    HB 56 Will Prevent Victims Of Crime From Seeking Federally-Funded Benefits And Services. ..............................18

    III.    HB 56 Will Affect Immigrant Women's Willingness To Seek Help From Law Enforcement..............................................................20

    IV.    HB 56 Will Impose Additional Barriers On Immigrant Women Seeking To Escape Violence...............................................................22

        A.    HB 56 Prevents Victims From Achieving Economic Independence By Criminalizing The Solicitation And Performance Of Work By Undocumented Immigrants..........24

        B.    HB 56 Creates Housing Barriers By Criminalizing The Act Of Knowingly Entering Into A Rental Agreement With An Undocumented Person. .............................................27

    V.    HB 56 Unfairly Subjects Providers Attempting To Assist Victims To Criminal Prosecution.......................................................29

CONCLUSION .................................................................................................32

i

# TABLE OF AUTHORITIES

**Page(s)**

STATUTES

8 U.S.C. § 1367(a), (b).................................................................................12

8 U.S.C. § 1611(c)........................................................................................27

42 U.S.C. § 3602(b)......................................................................................31

Ala. Code § 13A-10-2...................................................................................19

LEGISLATIVE HISTORY

Adoption and Safe Families Act of 1997, Pub. L. No. 105-89, 111 Stat. 2115........6

Alabama House Bill 56....................................................................passim

Child Abuse Prevention and Treatment Act, Pub. L. No. 243-97, 42 U.S.C.
§ 10603a (1996)......................................................................................6

Children's Health Insurance Reauthorization Act of 2009, Pub. L. No. 111-3
§ 214........................................................................................................7

151 Cong. Rec. E2606-07 (2005)...............................................................12

Dept. of Justice Appropriations Authorization Act, Fiscal Years 2006
through 2009: Report of the Committee on the Judiciary, House of
Representatives, to accompany H.R. 3402, H.R. Rep. No. 109-233
(2005)...............................................................................................12, 16

Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601 et. seq.........................31

H. COMM. ON THE JUDICIARY, *Report Accompanying H.R. Rep. No. 103-395*........21

H.R. REP. NO. 103-395 (1993)......................................................................9

Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.
L. No. 104-208, 110 Stat. 3009 (1996) (codified as amended in section of
8 U.S.C.) ........................................................................................3, 18, 19

# TABLE OF AUTHORITIES
(continued)

**Page**

Immigration & Nationality Act, 8 U.S.C. 1229(e) ...........................................12, 14

Immigration Act of 1990 § 701, Pub. Law No. 101-649, 104 Stat. 6478 (1990)...............................................................................................................12

Personal Responsibility and Work Opportunity Reconciliation Act of 1996, 104-193, 110 Stat. 2105 (Aug. 22, 1996) ..................................................3, 19, 27

Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, §§ 801-34 (2006) ..................................................15

Public Health Service Act, 42 U.S.C. § 290hh-1, Pub. L. 107-116, 115 Stat. 2201 (2002).....................................................................................................7

Title VIII of the Civil Rights Act of 1968 .............................................................31

Trafficking Victims Reauthorization Act of 2003, Pub. L. 108-193, 117 Stat. 2875 (2003).................................................................................................12, 19

Trafficking Victims Reauthorization Act of 2005, Pub. L. 109-164, §§ 101, 201, 119 Stat. 3558, 3560, 3567 (2005) ...........................................................12

Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386 (2000)...................................................................................................3, 14

Violent Crime Control and Law Enforcement Act of 1994, Pub L. No. 103-322, 108 Stat. 1796 (1994).................................................................................14

William Wilberforce Trafficking Victims Protection Act, Pub. L. 110-457 (2008)...............................................................................................................12

## REGULATIONS

62 Fed. Reg. 61344, 61363-371 ...............................................................................13

67 Fed. Reg. 4784 (Jan. 31, 2002) ...........................................................................14

72 Fed. Reg. 53014 (Sept. 17, 2007) .......................................................................14

iii

# TABLE OF AUTHORITIES
(continued)

**Page**

73 Fed. Reg. 75540 (Dec. 1, 2008) .........................................................................14

DEPT. OF JUSTICE, *Final Specification of Programs Necessary For Protection of Life or Safety*, 66 Fed Reg. 3613, A.G. Order No. 2353-2001 (Jan. 16, 2001) .........................................................................3, 19, 28, 31

U.S. CITIZENSHIP AND IMMIGRATION SERVS., *Interim Final Rule, Adjustment of Status to Lawful Permanent Resident for Aliens in T or U Nonimmigrant Status*, 73 Fed. Reg. 75540 (Dec. 1, 2008) ...............................14

**OTHER AUTHORITIES**

Andrew Cuomo, *Letter to HUD Recipients*, U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT (Jan. 19, 2001) ......................................................28

Anna Gorman, *U-visa program for crime victims falters*, LOS ANGELES TIMES (Jan. 26, 2009).........................................................................15

BUREAU OF JUSTICE STATISTICS, *Female Victims of Violent Crime* (1991) ............22

BUREAU OF JUSTICE STATISTICS, *Violence Against Women: Estimates from the Redesigned Survey* (Aug. 1995).................................................................22

Cheribeth Tan et al., The *Role of Social Support in the Lives of Women Exiting Domestic Violence Shelters: An Experimental Study*, 10 J. OF INTERPERSONAL VIOLENCE 447-48 (1995) ..........................................................29

Chris Hogeland & Karen Rosen, *Dreams Lost, Dreams Found: Undocumented Women in the Land of Opportunity*, COALITION FOR IMMIGRANT AND REFUGEE RIGHTS AND SERVICES (1990) ....................................8

COALITION FOR IMMIGRANT AND REFUGEE RIGHTS AND SERVICES, A Needs Assessment of Undocumented Women (1990) ..................................................27

Deeana Jang et al., *Domestic Violence in Immigrant and Refugee Communities: Asserting the Rights of Battered Women* (1997)........................23

iv

## TABLE OF AUTHORITIES
(continued)

**Page**

DEPT. OF HOMELAND SECURITY, *Centralization of Interim Relief for U Nonimmigrant Status Applicants* (Oct. 8, 2003)..................................................16

DEPT. OF HOMELAND SECURITY, *DHS Broadcast Message on New 384 Class of Admission Code* (Dec. 21, 2010) ..................................................16

DEPT. OF HOMELAND SECURITY, *Exercising Prosecutorial Discretion* (Nov. 7, 2000) ..................................................13

DEPT. OF HOMELAND SECURITY, *Fact Sheet DHS Blue Campaign* (April 2011) ..................................................11

DEPT. OF HOMELAND SECURITY, *Interim Guidance Relating to Officer Procedure Following Enactment of VAWA 2005* (Jan. 22, 2007)................12, 16

DEPT. OF JUSTICE, *Supplemental Guidance on Battered Alien Self-Petitioning Process and Related Issues* (May 6, 1997)..................................................16

*Domestic Violence and Housing*, NATIONAL COALITION AGAINST DOMESTIC VIOLENCE ..................................................27

Donna Coker, *Shifting Power for Battered Women: Law, Material Resources and Poor Women of Color,* 33 UNIV. OF DAVIS LAW REVIEW 1009 (2000).......25

Duren Banks & Tracey Kyckelhahn, *Characteristics of Suspected Human Trafficking Incidents, 2008-2010*, U.S. DEPT. OF JUSTICE BUREAU OF JUSTICE STATISTICS (Apr. 2011) ..................................................8

Edna Erez & Nawal Ammar, *Violence Against Immigrant Women and Systemic Responses: An Exploratory Study*, NAT'L INSTITUTE OF JUSTICE REPORT (2003) ..................................................8

Edna Erez & Carolyn Copps Hartley, *Battered Immigrant Women and the Legal System: A Therapeutic Jurisprudence Perspective*, 4(2) WESTERN CRIMINOLOGY REVIEW 155 (2003) ..................................................25

Giselle Aguilar Hass, et al., *Battered Immigrants and U.S. Citizen Spouses* (April 24, 2006) ..................................................8, 9, 25

v

# TABLE OF AUTHORITIES
(continued)

**Page**

IMMIGRATION AND NATURALIZATION SERVICE, *Revocation of VAWA-Based Self-Petitions* (Aug. 5, 2002) ............................................................16

Jana L. Jasinski et al., U.S. DEPT. OF JUSTICE NATIONAL INSTITUTE OF JUSTICE, *The Experience of Violence in the Lives of Homeless Women: A Research Report* 2 (2005) .....................................................................28

Jessica Mindlin, *Dynamics Of Sexual Assault And The Implications For Immigrant Women*, in EMPOWERING SURVIVORS: LEGAL RIGHTS OF IMMIGRANT VICTIMS OF SEXUAL ASSAULT (Leslye Orloff ed., 2010) ..............25

John Morton, *Exercising Prosecutorial Discretion Consistent with the Civil Immigration Enforcement Priorities of the Agency for the Apprehension, Detention and Removal of Aliens*, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT (June 17, 2011)....................................................17, 18

John Morton, *Prosecutorial Discretion: Certain Victims, Witnesses, and Plaintiffs*, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT (June 17, 2011) ................................................................................................12

Jonathan Horne et al., *Federal Pre-emption of Laws Discriminating by Immigration Status* (April 2011) ..........................................................3

Lee Bowker, *Marital Rape: A Distinct Syndrome?*, 64 SOCIAL CASEWORK: THE J. OF CONTEMP. SOCIAL WORK 347-52 (1983) ............................29

Leslye E. Orloff, *Lifesaving Welfare Safety Net Access for Battered Immigrant Women and Children: Accomplishments and Next Steps*, 7 WM. & MARY J. OF WOMEN & L. 597 (2001) ......................................27

Maia Ingram et al., *Experiences of Immigrant Women Who Self-Petition Under The Violence Against Women Act*, 16(8) VIOLENCE AGAINST WOMEN 858 (2010) .....................................................................10, 23

Martha L. Coulter et al., *Police-Reporting Behavior and Victim-Police Interactions as Described by Women in a Domestic Violence Shelter*, 14 J. INTERPERSONAL VIOLENCE 1290 (Dec. 1999) .................................21

DCACTIVE-15826474.2

# TABLE OF AUTHORITIES
### (continued)

**Page**

Mary Ann Dutton, et al., *Characteristics of Help-Seeking Behaviors, Resources and Service Needs of Battered Immigrant Latinas*, 2(2) GEO. J. ON POVERTY L. & POL'Y, 245-305 (2000) .........................................9, 26, 29, 30

Mary Ann Dutton & Lisa Goodman, *Coercion in Intimate Partner Violence: Toward a New Conceptualization*, 52(11/12) SEX ROLES 743 (June 2005)........7

Mary Bauer & Mónica Ramírez, *Injustice On Our Plates: Immigrant Women in the U.S. Food Industry,* SOUTHERN POVERTY LAW CENTER (Nov. 2010)......10

Migration Policy Institute, MPI Data Hub, Alabama Fact Sheet (2009) .................4

Millie C. Astin et al., *Post-traumatic Stress Disorder Among Battered Women: Risk and Resiliency Factors*, 8 VIOLENCE AND VICTIMS 24 (1993) ..................................................................................................................29

Nawal Ammar et al., *Calls to Police and Police Response: A Case Study From the Latina Immigrant Women*, 7 U.S. J. OF INT'L POLICE SCI. & MGM'T 230 (2005) ................................................................................................21

OFFICE OF CIVIL RIGHTS, DEPARTMENT OF HEALTH AND HUMAN SERVICES, *Access to HHS Funded Services for Immigrant Survivors of Domestic Violence* (Jan. 19, 2001) ...............................................................................28

OFFICE OF CIVIL RIGHTS, U.S. DEPT. OF HEALTH AND HUMAN SERVICES, *Policy Guidance Regarding Inquiries Into Citizenship, Immigration Status And Social Security Numbers In State Applications For Medicaid, State Children's Health Insurance Program (Schip), Temporary Assistance For Needy Families (Tanf), And Food Stamp Benefits* (Jan. 21, 2003) .................................................................................................20

Sonia H. Parras Konrad, *Briefing on the Aftermath of the Postville, Iowa, Raid and the Legal Challenges That Immigrant Women and Children Victims of Crimes of Violence Are Facing Today* (Sept. 23, 2008) ..................11

SOUTHERN POVERTY LAW CENTER, *Under Siege: Life for Low Income Latinos in the South*, at 28 (April 2009) .............................................................10

DCACTIVE-15826474.2

# TABLE OF AUTHORITIES
## (continued)

**Page**

Sudha Shetty & Janice Kaguyutan, *Immigrant Victims of Domestic Violence: Cultural Challenges and Available Legal Protections*, NAT'L RESOURCE CENTER ON DOMESTIC VIOLENCE/PA. COALITION AGAINST DOMESTIC VIOLENCE (2011) .....................................................................................9

U.S. DEPT. OF STATE, *Trafficking in Persons Report* (2004)...................................11

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT FIELD OFFICE DIRECTOR, *Memorandum re - Guidance: Adjudicating Stay Requests Filed by U Nonimmigrant Status (U-visa) Applicants* (Sept. 24, 2009)..............................17

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *Guidance: Adjudicating Stay Requests Filed by U Nonimmigrant Status (U-visa) Applicants* (Sept. 24, 2009) ..........................................................................................................15

DCACTIVE-15826474.2

## INTEREST OF AMICUS CURIAE

Amicus Curiae Alabama Coalition Against Domestic Violence ("ACADV")
is a nonprofit organization dedicated to working toward a peaceful and respectful
society where domestic violence no longer exists.  Since 1978, ACADV has
worked to prevent domestic violence against women by exposing its root causes,
ensuring the availability of services for victims, helping victims and their families
rebuild their lives through nonviolent means, and eliminating the re-victimization
of victims by individuals, organization, and society through education and
collaboration.  ACADV serves domestic violence victims throughout the State of
Alabama through its 19-member shelter programs, and a 24-hour crisis line.
ACADV also advocates on behalf of victims through the development of
legislation to strengthen legal protections for victims, the pursuit of additional
funding for programs serving battered women and their children, and the
promotion of public policies that meet the needs of victims.

With the support of forty-seven additional organizations,[1] ACADV presents
the Court with the unique and critical perspective of the repercussions of
Alabama's legislation House Bill 56 ("HB 56") on immigrant victims of domestic
violence, sexual assault, and human trafficking, to an extent these issues are not

---

[1] Motion By Alabama Coalition Against Domestic Violence For Leave To File Amicus
Curiae Brief In Support Of Plaintiffs' Motion For Preliminary Injunction, Attachment A, Ex. 1.

DCACTIVE-15826474.2

fully developed in the parties' briefing. This brief provides further support for granting plaintiffs' motion for a preliminary injunction. HB 56 should be enjoined from taking effect pending a final determination of the merits of plaintiffs' complaint.

## INTRODUCTION

Over the last two decades, Congress and the Department of Homeland Security ("DHS")[2] have specifically and repeatedly acknowledged the particular vulnerabilities of immigrant women. Immigrant victims of domestic violence, sexual assault, and human trafficking experience widespread barriers to assistance, services, and law enforcement. They are also far more likely to be exploited in the workplace and at home, and routinely encounter difficulties in exercising their legal rights.

The federal government has enacted protections for these most vulnerable members of our society – laws that establish guarantees that all persons, without regard to immigration status, have access to federally funded health care and to programs and services necessary to protect life and safety, including shelter,

---

[2] When the Department of Homeland Security (DHS) was founded in 2002, the functions that had previously been those of the Immigration and Naturalization Service (INS) moved from the U.S. Department of Justice to DHS. Many of the policies that direct immigration benefits and enforcement at DHS were originally issued by INS. In this brief, we use the term DHS to describe both current DHS and legacy INS.

DCACTIVE-15826474.2

emergency medical services, victim assistance, soup kitchens, and disaster relief.[3] Federal immigration laws further guarantee special immigration protections to encourage immigrant victims of certain crimes, including domestic violence, child abuse, elder abuse, sexual assault, and human trafficking, to report and fully participate in the investigation of crimes and the prosecution of perpetrators without fear of arrest, detention, removal, or separation from their children.[4]  Many of these immigration protections have been developed and are continually enhanced by Congress's creation and continued reauthorizations of the Violence Against Women Act (VAWA) and the Trafficking Victims Protection Act (TVPA).  Alabama HB 56 will threaten and undermine these federal policy priorities if  Plaintiffs' Motion for Preliminary Injunction is not granted.  This legislation, if implemented, would cause irreparable harm to immigrant women,

---

[3] Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (1996) (codified as amended in section of 8 U.S.C.); Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA"), 8 U.S.C. §§ 1611(b)(1)(D), 1621(b)(4); U.S. Dept. of Justice, Final Specification of Community Programs Necessary for Protection of Life or Safety Under Welfare Reform Legislation, A.G. Order No. 2353-2001, 66 Fed. Reg. 3613, 3616 (Jan. 16, 2001). *See also* Jonathan Horne et al., *Federal Pre-emption of Laws Discriminating by Immigration Status* (April 2011), *available at* http://iwp.legalmomentum.org/reference/additional-materials/public-benefits/unrestricted-benefits/Federal%20Preemption%20and%20State%20Laws%20Version4.22.11.pdf/view.

[4] Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386 (2000) ("VAWA 2000") §§ 1501-13.

3

who are nearly half of Alabama's immigrant population,[5] and their families.

HB 56 will irreparably harm immigrant women by cutting them off from essential services and protections that federal law intended for them to access. Section 12 of HB 56, for example, requires law enforcement officers to investigate the immigration status of any person the officer stops, arrests, or detains if the officer has a "reasonable suspicion" that the person is "unlawfully present in the United States."[6]  Immigrant women with pending applications for legal immigration status that the DHS has deemed valid or who would otherwise qualify for federal immigration protections will face the threat of detention and removal when their immigration status cannot be quickly ascertained by local authorities or where, due to the complexities of immigration law, law enforcement fails to understand the immigration remedies available to immigrant victims of crime. Further, if HB 56 takes effect, many immigrant women will avoid the police out of fear that any interaction with law enforcement could lead to immigration status inquiries.  They will be explicitly cut off from crime victim services by HB 56, which will harm both the victim's ability to heal following the trauma of crime victimization and the State of Alabama's ability to prosecute rapists, human

---

[5]In Alabama, 46.5 percent of the immigrant population was female in 2009, and 53.5 percent male.  Migration Policy Institute, MPI Data Hub, Alabama Fact Sheet (2009), http://www.migrationinformation.org/datahub/state.cfm?ID=AL.

[6] HB 56 § 12.

DCACTIVE-15826474.2

traffickers, and perpetrators of child, elder, and spouse abuse. Immigrant victims will also avoid seeking federally-funded benefits and services to which they are entitled for the same reasons.

HB 56 also irreparably harms immigrant women by imposing additional barriers to escaping violence, and potentially criminalizes the actions of those seeking to assist them.  Section 11 of HB 56 prohibits the solicitation and performance of work by undocumented immigrants,[7] and section 13 makes it a crime to "harbor" an alien, transport an alien, or knowingly enter into a rental agreement with a person who is "unlawfully" in the United States.[8]  These provisions collectively lock immigrant women and children in abusive homes with no escape.  Undocumented victims of violence who are able to flee to a shelter alone or with their children will have no ability to enter into a rental agreement to secure housing.  This is just one example of one of the many barriers this law imposes on battered immigrant women who seek to leave and become economically independent from perpetrators.  As yet another example, sexual predator landlords are known to sometimes commit sexual violence against vulnerable immigrant women – forcing tenants to have unwanted sex through threats of eviction and deportation.  By making it illegal for undocumented

---

[7] HB 56 § 11.
[8] HB 56 § 13.

DCACTIVE-15826474.2

immigrants to enter into a lease, a black market rental economy will emerge where

perpetrator landlords will have additional power to force tenants to exchange sex

for housing without fear of criminal prosecution or civil liability for their actions.

HB 56's further criminalization of transporting, harboring, and sheltering

undocumented immigrants undermines the ability of domestic and sexual violence

shelters, rape crisis centers, and other victim services providers to transport victims

to court, to the hospital for treatment of critical injuries, or to sexual assault

forensic exams, and meetings with police, prosecutors, and civil attorneys.[9]

---

[9] Although HB 56 exempts many service providers from the requirement to verify immigration status, the statute provides only a limited exception to criminal penalties for harboring, sheltering, transporting, or shielding undocumented immigrants. The exemption is limited to "first responders" and "protective service providers." *See* HB 56 § 13(e). "Protective services provider" is defined as a "child protective services worker; adult protective services worker; protective services provider; or provider of services to victims of domestic violence, stalking, sexual assault, or human trafficking that receives federal grants under the Victims of Crimes Act, the Violence Against Women Act, or the Family Violence Prevention and Services Act." HB 56 § 3(12). This definition leaves open to criminal liability service providers that serve victims of child abuse, elder abuse and dating violence and providers funded under various other federal statutes. While HB 56 explicitly exempts child protective services workers, it leaves open to liability foster care parents and child day care services who may "harbor" undocumented abused or neglected children. Foster care parents would not fall under the definition of protective services provider because victims of child abuse are not included in the definition and because foster care parents receive federal funding under the Adoption and Safe Families Act of 1997, Pub. L. No. 105-89, 111 Stat. 2115. Service providers who provide treatment to child abuse victims under the Child Abuse Prevention and Treatment Act, Pub. L. No. 243-97, 42 U.S.C. § 10603a (1996), would be liable. HB 56 also does not exempt providers of assisted living, senior housing, adult day care services, and long-term care to undocumented elder abuse victims, including churches and other faith-based programs. While HB 56 explicitly includes trafficking victims, it does not exempt service providers that receive funding from the Trafficking Victims Protection Act. HB 56 would leave open to criminal liability health care providers that provide services to victims with funding under several statutes not included in HB 56. For example, the State Children's Health Insurance Program (SCHIP), which provides health benefits to undocumented but lawfully residing pregnant women and children, receives

(continued…)

DCACTIVE-15826474.2

This legislation is of unprecedented reach and would create a sub-class of immigrant women and children living in perpetual fear, trapping many in violently abusive relationships, housing situations, or work environments. HB 56 makes immigrant women and children even more vulnerable, empowering perpetrators of violence with new tools to threaten, coerce, control,[10] and silence their victims.

HB 56 creates an environment in which immigrant victims would rightly fear seeking redress under federal protections that Congress set up specifically for their benefit and protection. This bill directly conflicts with federal laws and interests, and will cause irreparable harm to immigrant victims if it is allowed to take effect during the pendency of this litigation. There is a compelling need for a preliminary injunction to be issued in this matter.

## ARGUMENT

I.    **Immigrant Women Face Particular Challenges That Make Them Uniquely Susceptible To Crime And Other Abuse.**

In the United States, immigrant women are in a unique and vulnerable

---

(continued…)

funding under the Children's Health Insurance Reauthorization Act of 2009, Pub. L. No. 111-3 § 214. HB 56 would also hold criminally liable social workers and mental health providers who receive funding under the Public Health Service Act, 42 U.S.C. § 290hh-1, Pub. L. 107-116, 115 Stat. 2201 (2002). This Act funds the National Child Traumatic Stress Initiative, a program developed to provide treatment to children who have witnessed or experienced traumatic events.

[10] Mary Ann Dutton & Lisa Goodman, *Coercion in Intimate Partner Violence: Toward a New Conceptualization*, 52(11/12) SEX ROLES 743 (June 2005), *available at* http://www.mendeley.com/research/coercion-in-intimate-partner-violence-toward-a-new-conceptualization/.

DCACTIVE-15826474.2

position.  For reasons related to family, housing, education, employment, limited

English proficiency, and lack of knowledge about their legal rights, immigrant

women are particularly likely to suffer abuse, violence, sexual assault, and other

crimes.  The vast majority of labor trafficking victims are immigrants.[11]

For immigrant women, perpetrators often use immigration-related threats,

intimidation, and other acts of violence to assert power or control, even absent the

devastating threat of the various immigration enforcement penalties in HB 56.[12]  If

the perpetrator is a U.S. citizen or permanent resident, he or she can use this power

to threaten the victim with deportation by reporting the victim or the victim's

family members' undocumented status to immigration enforcement officials,

threatening to revoke residency sponsorship, or by refusing to file necessary

---

[11] Duren Banks & Tracey Kyckelhahn, *Characteristics of Suspected Human Trafficking Incidents, 2008-2010*, U.S. DEPT. OF JUSTICE BUREAU OF JUSTICE STATISTICS, at 6 (Apr. 2011), http://bjs.ojp.usdoj.gov/content/pub/pdf/cshti0810.pdf (ninety-five percent of labor trafficking victims in the United States were immigrants and more than two-thirds of them were women).

[12] Among battered immigrant women from diverse cultures, 65 percent report that their spouses used threats of deportation and of not filing or withdrawing immigration papers as a coercive control tactic.  Edna Erez & Nawal Ammar, *Violence Against Immigrant Women and Systemic Responses: An Exploratory Study*, NAT'L INSTITUTE OF JUSTICE REPORT (2003), https://www.ncjrs.gov/pdffiles1/nij/grants/202561.pdf.  *See also* Chris Hogeland & Karen Rosen, *Dreams Lost, Dreams Found: Undocumented Women in the Land of Opportunity*, COALITION FOR IMMIGRANT AND REFUGEE RIGHTS AND SERVICES (1990), *available at* http://iwp.legalmomentum.org/reference/additional-materials/cultural-competency/dynamics-of-violence-against-immigrant-women/dreams-lost-dreams-found-undocumented-immigrant-women-in-the-land-of-opportunity-1990/ (48 percent report rise in family violence following immigration); Giselle Aguilar Hass, et al., *Battered Immigrants and U.S. Citizen Spouses*, at 3 (April 24, 2006), *available at* http://iwp.legalmomentum.org/reference/additional-materials/research-reports-and-data/research-violence-against-immigrant-women-in-the-u.s/BB_RSRCH_ImmVictims_Battered_Imm.pdf/view (31 percent of immigrant victims reported rise in domestic violence following immigration).

DCACTIVE-15826474.2

immigration petitions that would provide the victim with lawful status in the U.S.[13] Research has found that 72.3 percent of battered immigrants reported that their spouses never filed immigration petitions on their behalf, even though 50.8 percent of them qualified for the petitions. Those abusers who did eventually file petitions for their spouses took almost four years to do so.[14] When a foreign born woman is married to a U.S. citizen the abuse rate in these marriages rises to almost three times the national average.[15] Fear of deportation is a powerful tool used by perpetrators to prevent immigrant women from seeking help.[16] This power allows perpetrators to trap these women in violent relationships and target them for sexual violence.

Many immigrant women, including those eligible for lawful immigration status, must frequently seek work without employment authorization, making them particularly vulnerable to exploitation, sexual harassment and assault, and retaliation by unscrupulous employers. Current DHS case processing practices

---

[13] Sudha Shetty & Janice Kaguyutan, *Immigrant Victims of Domestic Violence: Cultural Challenges and Available Legal Protections*, NAT'L RESOURCE CENTER ON DOMESTIC VIOLENCE/PA. COALITION AGAINST DOMESTIC VIOLENCE (2011), available at http://www.vawnet.org/applied-research-papers/print-document.php?doc_id=384.

[14] Mary Ann Dutton, et al., *Characteristics of Help-Seeking Behaviors, Resources and Service Needs of Battered Immigrant Latinas*, 2(2) GEO. J. ON POVERTY L. & POL'Y, 245-305 (2000), *available at* https://www.ncjrs.gov/App/publications/Abstract.aspx?id=189072.

[15] Hass, et al., *supra* note 12.

[16] The problems of domestic violence are "terribly exacerbated in marriages where one spouse is not a citizen and the non-citizen's legal status depends on his or her marriage to the abuser." H.R. REP. NO. 103-395, at 26-27 (1993).

9

force immigrant victims of domestic violence and sexual assault to wait for up to a

year before victims with cases deemed legitimate by DHS receive legal work

authorization[17] or any form of immigration documentation that would be

considered sufficient under Alabama's HB 56.   Immigrant women are forced to

participate in the informal and sometimes underground employment sector, serving

as domestic workers, hotel and office cleaners, and farm and factory workers.

Employers can take advantage of undocumented women's lack of stable

immigration status, lack of English language proficiency, and fear of government

authorities to create or maintain unsafe working conditions, underpay employees,

and perpetrate sexual violence.  Sexual harassment at work is reported by 77

percent of Latina immigrants.[18]  Employers and managers threaten to report

undocumented employees to immigration authorities in order to ensure their

silence when they have been sexually harassed or assaulted at work, and to

---

[17] Maia Ingram et al., *Experiences of Immigrant Women Who Self-Petition Under The Violence Against Women Act*, 16(8) VIOLENCE AGAINST WOMEN 858 (2010), *available at* https://www.ncjrs.gov/app/publications/Abstract.aspx?id=253592.

[18] SOUTHERN POVERTY LAW CENTER, *Under Siege: Life for Low Income Latinos in the South*, at 28 (April 2009), *available at* http://www.splcenter.org/get-informed/publications/undersiege-life-for-low-income-latinos-in-the-south; *see also* Mary Bauer & Mónica Ramírez, *Injustice On Our Plates: Immigrant Women in the U.S. Food Industry*, SOUTHERN POVERTY LAW CENTER, at 4 and 42 (Nov. 2010), *available at* http://www.splcenter.org/sites/default/files/downloads/publication/Injustice_on_Our_Plates.pdf.

10

discourage reporting of abuse and labor law violations.[19]

In addition, human trafficking results in approximately 14,500 to 17,500 individuals trafficked into the United States every year.[20]  Traffickers use force, fraud, and coercion to enslave workers, compel work and in many instances subject workers to sexual violence.[21]  Already exploited by their traffickers who withhold wages, threaten deportation, and physically harm them, trafficked women are told by their traffickers that calling the police or anyone else will result in deportation.[22]  Identification of human trafficking victims, offering them services, assistance, shelter, transportation and health care, and supporting their testimony and assistance in the prosecution of human traffickers has been a significant priority of the DHS since July of 2010.[23]  HB 56 would significantly undermine DHS Blue Campaign anti-trafficking efforts in Alabama.

## II.    HB 56 Undermines Federal Protections For Immigrants Who Are Victims Of Crime.

In recognition of the severity of domestic abuse and sexual assault

---

[19] *Id.*; *see, e.g.*, Sonia H. Parras Konrad, *Briefing on the Aftermath of the Postville, Iowa Raid and the Legal Challenges That Immigrant Women and Children Victims of Crimes of Violence Are Facing Today* (Sept. 23, 2008) (statement of Sonia Parras Konrad presented to H.R. members and staff), *available at* http://www.legalmomentum.org/our-work/gender-equity-and-gender-bias/reports-and-resources/solis-house-briefing-postville.pdf.

[20] U.S. DEPT. OF STATE, *Trafficking in Persons Report*, at 15, 23 (2004), *available at* http://www.state.gov/documents/organization/34158.pdf.

[21] *Id.* at 6, 15.

[22] *Id.* at 12.

[23] *See* DEPT. OF HOMELAND SECURITY, *Fact Sheet DHS Blue Campaign* (April 2011), http://www.dhs.gov/ynews/gc_1279809595502.shtm.

perpetrated against immigrant women and human trafficking perpetrated against immigrant women, children, and men, as well as the need of these survivors to access social services and housing designed to help and support victims, Congress has specifically, and repeatedly, acted to protect the rights and well-being of immigrant victims.[24]  Federal guidelines are clear that not every immigrant who may be undocumented should be subject to immigration enforcement.[25]  Federal immigration officials, for example, may not rely upon information provided by abusers, perpetrators, or traffickers to pursue enforcement actions against undocumented immigrant crime victims,[26] and are strongly cautioned against arresting immigrants at "sensitive locations," such as rape crisis centers or domestic abuse shelters, since immigrants there likely qualify for victim-based immigration benefits.[27]

---

[24] In addition to the laws discussed herein, Congress also enacted protections for immigrant women in the Immigration Act of 1990 § 701, Pub. Law No. 101-649, 104 Stat. 6478 (1990) (battered spouse waiver); Trafficking Victims Reauthorization Act of 2003, Pub. L. 108-193, 117 Stat. 2875 (2003); Trafficking Victims Reauthorization Act of 2005, Pub. L. 109-164, §§ 101, 201, 119 Stat. 3558, 3560, 3567 (2005); and William Wilberforce Trafficking Victims Protection Act, Pub. L. 110-457 (2008) (expanding immigration relief, services and benefits for trafficking victims).

[25] John Morton, *Prosecutorial Discretion: Certain Victims, Witnesses, and Plaintiffs*, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, at 3 (June 17, 2011), *available at* http://www.ice.gov/doclib/secure-communities/pdf/domestic-violence.pdf.

[26] 8 U.S.C. § 1367(a), (b); *see also*, Dept. of Justice Appropriations Authorization Act, Fiscal Years 2006 through 2009: Report of the Committee on the Judiciary, House of Representatives, to accompany H.R. 3402, H.R. Rep. No. 109-233, at 122 (2005); 151 Cong. Rec. E2606-07 (2005) (statement of Rep. Conyers).

[27] Immigration & Nationality Act, 8 U.S.C. 1229(e); DEPT. OF HOMELAND SECURITY, *Interim Guidance Relating to Officer Procedure Following Enactment of VAWA 2005*, at 5 (Jan.

(continued…)

12

HB 56 threatens the efficacy of these federal protections and undermines the nation's obligations to protect immigrant victims from abuse. Immigrant women with pending applications for legal immigration status or who qualify for such protections will face the threat of detention and removal when they cannot produce formal identification and their immigration status cannot be easily verified.[28] HB 56's emphasis on identification documents and verified immigration status will also make it more difficult for battered immigrant women to receive federally-funded benefits and services to which they are entitled under the law, since interacting with public agencies without these documents will further expose them to potential removal. This will cause irreparable harm to immigrant victims of crime and runs counter to federal policy. Thus, HB 56 should be preliminarily enjoined pending the outcome of this litigation.

---

(continued…)

22, 2007); DEPT. OF HOMELAND SECURITY, *Exercising Prosecutorial Discretion* (Nov. 7, 2000), *available at*
http://www.asistahelp.org/documents/resources/ICE_384_Memo_FCD88FAD0E6DD.pdf
    [28] The complexities of federal immigration law, the multiple types of legal immigration status, and the wide range of federally acceptable evidence documenting status and lawful presence will make it virtually impossible for local Alabama law enforcement authorities to implement the HB 56 in any fair, informed manner consistent with federal immigration law. To illustrate this issue, for the subset of lawfully present immigrants eligible for public benefits, the Attorney General has issued guidance that contains nine pages, in small font, of the various types of documentation acceptable to establish citizenship, lawful permanent residency, and other qualified immigrant status. 62 Fed. Reg. 61344, 61363-371 (*e.g.*, asylees, refugees, undocumented battered immigrant VAWA self-petitioners, and VAWA Cancellation of Removal applicants).

DCACTIVE-15826474.2

A.    **HB 56 Will Lead To The Detention And Removal Of Immigrant Women With Pending Applications For Legal Immigration Status Under VAWA And TVPA.**

In 1994, Congress enacted the Violence Against Women Act ("VAWA") to protect the rights and well-being of immigrant women and to encourage them to report crimes and abuse regardless of their immigration status.[29]  In 2000, Congress reauthorized the Violence Against Women Act and passed the Trafficking Victims Protection Act ("TVPA").  Together this legislation broadened these protections by creating two visas for victims who cooperate with law enforcement – the "T Visa" for human trafficking victims and the "U Visa" for victims of domestic violence, sexual assault, and other crimes.[30]  Congress created the U Visa, in part, because "[a]ll women and children who are victims of these crimes [including domestic violence and sexual assault] committed against them in the United States must be able to report these crimes to law enforcement and fully participate in the investigation of the crimes […] and the prosecution of perpetrators."[31]

---

[29] Violent Crime Control and Law Enforcement Act of 1994, Pub L. No. 103-322, 108 Stat. 1796 (1994).

[30] VAWA 2000 §§ 1501–13; VAWA 2000 § 1513(a)(1)(B); Immigration and Nationality Act §§ 101(a)(15)(T), 101(a)(15)(U), 214(o), 214(p), 245(l), 245(m); 73 Fed. Reg. 75540 (Dec. 1, 2008).  The T and U Visa programs require coordination with local law enforcement and endorsement of the victims' cooperation in investigations and prosecutions.  VAWA 2000 §§ 1501–13.

[31] VAWA 2000 § 1513(a)(1)(B); Immigration and Nationality Act §§ 101(a)(15)(T), 101(a)(15)(U), 214(o), 214(p), 245(l), 245(m); 67 Fed. Reg. 4784 (Jan. 31, 2002); 72 Fed. Reg. 53014 (Sept. 17, 2007); U.S. CITIZENSHIP AND IMMIGRATION SERVS., *Interim Final Rule, Adjustment of Status to Lawful Permanent Resident for Aliens in T or U Nonimmigrant Status,*

(continued…)

DCACTIVE-15826474.2

HB 56 likely would lead to the detention and potential removal of immigrant women who are in the process of obtaining legal immigration status under VAWA and TVPA.  While victims with pending self-petitions receive documentation in the form of "*prima facie* determinations," they do not receive an identification card or formal judicial order.  The complete processing of these applications can take months, and even years.[32]  HB 56, however, requires the production of one of six state-approved identity documents to verify immigration status.[33]  If none of these six documents can be produced, local law enforcement must investigate the citizenship and immigration status of the person stopped, leading to prolonged detentions.[34]  Due to VAWA's confidentiality provisions, until recently even federal immigration authorities were unaware of an immigrant victim's pending or approved application for immigration relief.[35]  Only the Victims and Trafficking

---

(continued...)

73 Fed. Reg. 75540 (Dec. 1, 2008).  In 2005, VAWA was amended again, to further increase protections and ease restrictions for battered immigrant women and their children. Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, §§ 801-34 (2006) (VAWA 2005).

[32] Anna Gorman, *U-visa program for crime victims falters*, LOS ANGELES TIMES (Jan. 26, 2009); U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, *Guidance: Adjudicating Stay Requests Filed by U Nonimmigrant Status (U-visa) Applicants* (Sept. 24, 2009), *available at* http://www.ice.gov/doclib/foia/dro_policy_memos/11005_1-hd-stay_requests_filed_by_u_visa_applicants.pdf.

[33] HB 56 § 12(a), (d).

[34] HB 56 § 12(a).

[35] Morton, *supra* note 25.  This June 17, 2011 memo discusses a new DHS computerized VAWA confidentiality system.  However, on August 3, 2011 at the "Department of Homeland Security Blue Campaign One-Year Anniversary Event" in Washington, D.C., Secretary Janet

(continued...)

15

Unit of the Vermont Service Center – the centralized processing unit in which

VAWA, T Visa, and U Visa petitions are processed would have information about

any pending applications.[36]  HB 56 does not have any guidance to local law

enforcement officers about how to verify such applicant information, nor does it

have any guidance on how to help identify individuals who might qualify for such

protections.  Although DHS immigration enforcement officials are required to

comply with all aspects of immigration law and are under dual obligations of

immigration enforcement and immigrant crime victim identification, HB 56 takes

an immigration enforcement only approach that runs counter to DHS policies and

---

(continued...)

Napolitano and Connie L. Patrick, Director of the Federal Law Enforcement Training Academy, stated that training for DHS personnel on this new system was still under development.

[36] *See* DEPT. OF HOMELAND SECURITY Jan. 22, 2007 Memorandum, *supra* note 27; IMMIGRATION AND NATURALIZATION SERVICE, *Revocation of VAWA-Based Self-Petitions* (Aug. 5, 2002), *available at* http://www.asistahelp.org/documents/resources/INS_Revocation_Memo_BC44FBFCE5074.pdf; DEPT. OF HOMELAND SECURITY, *Centralization of Interim Relief for U Nonimmigrant Status Applicants* (Oct. 8, 2003), *available at* http://www.uscis.gov/USCIS/Laws/Memoranda/Static_Files_Memoranda/Archives%201998-2008/2003/ucntrl100803.pdf;  DEPT. OF JUSTICE, *Supplemental Guidance on Battered Alien Self-Petitioning Process and Related Issues* (May 6, 1997), *available at* http://www.asistahelp.org/documents/resources/Virtue_Memo_97pdf_53DC84D782445.pdf; Report of the Committee on the Judiciary, House of Representatives, *supra* note 26.

    To address this issue DHS in December 2010 implemented a computerized system that flags cases of immigrant crime victims who have pending and approved cases with DHS.  No training of DHS officials on this system has occurred to date. This system is not accessible to local law enforcement officials. *See* DEPT. OF HOMELAND SECURITY, *DHS Broadcast Message on New 384 Class of Admission Code* (Dec. 21, 2010), *available at* http://iwp.legalmomentum.org/reference/additional-materials/immigration/enforcement-detention-and-criminal-justice/government-documents/message%20to%20DHS%20384%20COA%20Final%2012.21.10.pdf/at_download/file.

DCACTIVE-15826474.2

priorities.

HB 56 therefore puts immigrant victims in danger of detention and removal, even when federal policies advise that stays of removal be granted for persons with pending U Visa applications who demonstrate *prima facie* eligibility or meet certain humanitarian factors.[37]  Federal policies also require VAWA, T Visa, U Visa applicants, and other persons with pending valid applications for immigration benefits to be released from detention.[38]  DHS has issued guidance to local immigration enforcement officers emphasizing that the fact that an immigrant is a victim of domestic violence, sexual assault, or trafficking weighs in favor of exercising prosecutorial discretion.[39]  HB 56 undermines these federal policies and

---

[37] U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT FIELD OFFICE DIRECTOR, M*emorandum re - Guidance: Adjudicating Stay Requests Filed by U Nonimmigrant Status (U-visa) Applicants* (Sept. 24, 2009), *available at* http://www.ice.gov/doclib/foia/dro_policy_memos/11005_1-hd-stay_requests_filed_by_u_visa_applicants.pdf

[38] *Id.*

[39] The June 17, 2011 guidance clarified DHS immigration enforcement priorities and issued policies designed to conserve resources.  Memoranda encourage DHS officials not to detain, remove or initiate enforcement actions against persons in the process of attaining legal immigration status (including battered immigrant VAWA self-petitioners and crime victims applying for U or T visas); persons present in the U.S. since childhood; persons who are pursuing or have graduated from U.S. high schools and universities; persons who are children, elderly, physically or mentally disabled, and their primary caretakers; pregnant and nursing women and their spouses; cooperating witnesses in criminal prosecutions and individuals pursuing civil rights remedies including for discrimination and others. *See* John Morton, *Exercising Prosecutorial Discretion Consistent with the Civil Immigration Enforcement Priorities of the Agency for the Apprehension, Detention and Removal of Aliens*, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT (June 17, 2011), *available at* http://iwp.legalmomentum.org/reference/additional-materials/immigration/enforcement-

(continued…)

17

protections, and interferes with immigrant victims' ability to obtain legal immigration status through Congressionally-prescribed means.

**B.    HB 56 Will Prevent Victims Of Crime From Seeking Federally-Funded Benefits And Services.**

Congress also has chosen to protect immigrant victims of some crimes by extending financial and mental health support, in part so that victims can report criminal activity and participate with law enforcement in the detection, investigation, prosecution, conviction, and sentencing of perpetrators.  When enacting the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRAIRA), Congress underscored its intent to protect battered immigrants by adding battered immigrant women and children to the categories of immigrants qualified to receive welfare benefits that prior legislation took away.[40]  IIRAIRA's restoration of access to public benefits for VAWA self-petitioners and their children reflected Congress's recognition that economic survival is a significant reason that victims remain with abusers.  IIRAIRA enables victims to break the

---

(continued…)

detention-and-criminal-justice/government-documents/Morton%206.17.11prosecutorial-discretion-memo.pdf/view.

    DHS issued a second memorandum explicitly designed to minimize the effect that immigration enforcement may have on the willingness and ability of victims and witnesses of crime and individuals pursuing legitimate civil rights complaints to call the police and pursue justice. Morton, *supra* note 25.

    [40] IIRIRA, *supra* note 3.  IIRIRA restored access to benefits for spouse and child abuse victims abused by U.S. citizen and lawful permanent resident spouses and parents whom DHS has determined have filed valid VAWA immigration cases.  A month earlier, on August 22, 1996, PRWORA had cut off access to public benefits for many immigrant non-citizens.

DCACTIVE-15826474.2

cycle of economic dependency on an abusive spouse, partner, parent, or employer – regardless of immigration status. Congress also extended financial support to immigrant victims through the T Visa. T Visa holders and certain family members of victims of a severe form of trafficking are eligible for federally funded or administered benefits and services (*e.g.*, refugee cash and medical assistance, TANF, Medicaid, and food stamps) provided they meet other program criteria (*e.g.*, age or income levels).[41] In IIRIRA, Congress also defined a category of federally and state funded services necessary to protect life and safety that are required to be open to all persons without regard to immigration status.[42]

Sections 5 and 6 of HB 56 require state workers to report undocumented persons seeking government assistance.[43] This conflicts with federal policies and regulations intended to provide immigrant victims of crime with access to assistance necessary to protect life and safety, victim services, and the economic support they need to escape perpetrators. Since immigrant victims often will not

---

[41] The Trafficking Victims Protection Reauthorization Act of 2003 – Eligibility for Federally Funded or Administered Benefits and Services to the Same Extent as Refugees Extended to Certain Family Members of Victims of a Severe Form of Trafficking in Persons. The TVPA was reauthorized and amended by the Trafficking Victims Protection Reauthorization Act of 2003 (TVPRA), Pub L. No. 108-193,117 Stat. 2875.

[42] PRWORA §§ 401(b)(1)(D), 411(b)(4); *see also* DEPT. OF JUSTICE, *Final Specification of Programs Necessary For Protection of Life or Safety*, 66 Fed Reg. 3613, A.G. Order No. 2353-2001 (Jan. 16, 2001).

[43] State and local government employees who fail to report violations of the Alabama zero-tolerance immigration enforcement law are subject to criminal prosecution for "obstructing governmental operations," punishable by up to a year in prison. HB 56 §§ 5(f), 6(f); Ala. Code § 13A-10-2.

19

have one of the approved identity documents required under HB 56, they will be afraid to seek federally guaranteed assistance because of the risk of being reported by state benefits workers to federal immigration officials, exposing them to detention and removal.  Even those with pending or granted visa applications will face the same dilemma, since they too often lack the approved documents, even though they are lawfully present in the United States.  Further, these same sections of HB 56 conflict with federal government policies designed to ensure that applicant U.S. citizen children who live in families with mixed immigration statuses have access to public benefits without regard to the immigration status of their non-applicant parents.[44]

## III.    HB 56 Will Affect Immigrant Women's Willingness To Seek Help From Law Enforcement.

Immigration status significantly affects the willingness of immigrant women to seek law enforcement assistance.  Immigrants with stable permanent immigration status are more than twice as likely as women with temporary legal immigration status to call police for help in domestic violence cases (43.1 percent

---

[44] OFFICE OF CIVIL RIGHTS, U.S. DEPT. OF HEALTH AND HUMAN SERVICES, *Policy Guidance Regarding Inquiries Into Citizenship, Immigration Status And Social Security Numbers In State Applications For Medicaid, State Children's Health Insurance Program (Schip), Temporary Assistance For Needy Families (Tanf), And Food Stamp Benefits* (Jan. 21, 2003), *available at* http://www.hhs.gov/ocr/civilrights/resources/specialtopics/origin/policyguidanceregardinginquiri esintocitizenshipimmigrationstatus.html.

vs. 20.8 percent).[45]  This rate decreased to 18.8 percent if the battered immigrant

woman was undocumented.[46]  These reporting rates are significantly lower than

reporting rates of battered women generally in the United States (between 53

percent and 58 percent).[47]  As these statistics attest, domestic battery problems are

much more difficult to address in marriages where one spouse is not a citizen, and

the non-citizen's legal status depends on his or her relationship to the abuser.

Battered spouses are often deterred from taking action to protect themselves, such

as filing for a civil protection order, filing criminal charges, or calling the police,

because of the threat or fear of deportation.[48]

Under HB 56, immigrant crime victims will have no incentive, and in fact

will be more afraid to reach out to law enforcement for fear of detention and

removal.  A T or U Visa eligible victim likely will not seek help from law

enforcement at all or cooperate in investigating or prosecuting crimes committed in

Alabama.  This deterring effect will result in a significant loss of access to safety

for immigrant women in two important ways – the loss of law enforcement

assistance and the loss of potential legal status through a T or U Visa petition, if

---

[45] Nawal Ammar et al., *Calls to Police and Police Response: A Case Study From the Latina Immigrant Women*, 7 U.S. J. OF INT'L POLICE SCI. & MGM'T 230, 236 (2005).

[46] *Id.*

[47] Martha L. Coulter et al., *Police-Reporting Behavior and Victim-Police Interactions as Described by Women in a Domestic Violence Shelter*, 14 J. INTERPERSONAL VIOLENCE 1290, 1293 (Dec. 1999), *available at* http://jiv.sagepub.com/content/14/12/1290.

[48] H. COMM. ON THE JUDICIARY, *Report Accompanying H.R. Rep. No. 103-395*, at 26.

DCACTIVE-15826474.2

they report a crime to authorities and cooperate in a prosecution.  Essentially, HB 56's enforcement measures increase the likelihood of continued abuse and assault against immigrant women by removing their access to help and by giving their abusers a powerful tool to silence victims and avoid prosecution.  Perpetrators will also remain free to commit similar violent acts against other community members because of immigrant victims' fears of reporting violence against them to law enforcement.  Under HB 56, domestic violence victims, trafficking victims, and sexual assault victims are left trapped and isolated in violent situations without the option to call police for assistance.

## IV.    HB 56 Will Impose Additional Barriers On Immigrant Women Seeking To Escape Violence.

While many victims of domestic violence eventually leave their abusers, this often requires several attempts.[49]  Escaping violence is a difficult undertaking, and there are many obstacles to leaving an abusive relationship – including emotional ties, fear of retaliation, and lack of social support.  Immigrant women, in particular, face significant barriers to escaping violence.  Threats of deportation, combined with other factors such as limited English proficiency, limited information about legal protections, and economic constraints, increase the danger of retaliation

---

[49] *See, e.g.*, BUREAU OF JUSTICE STATISTICS, *Violence Against Women: Estimates from the Redesigned Survey*, at 4 (Aug. 1995); BUREAU OF JUSTICE STATISTICS, *Female Victims of Violent Crime* (1991).

DCACTIVE-15826474.2

against the victim and the likelihood that returning to an abusive spouse or employer becomes the victim's only option.[50]  For immigrant crime victims who are attempting to access VAWA protections, T Visas, or U Visas, the long wait further complicates a victim's ability to reduce susceptibility to the perpetrator's ongoing threats and manipulation.  Victims can wait over a year before receiving access to legal work authorization under these protections.[51]

If implemented, HB 56 will create further obstacles for battered immigrant women who have found the courage to leave their abusers.  Among other things, HB 56 criminalizes the solicitation and performance of work by undocumented persons, and also subjects any person knowingly entering into a housing rental agreement with an undocumented person to criminal prosecution.  The vast majority of immigrant victims that receive immigration protection based on crime victimization are undocumented immigrants to whom DHS will ultimately provide legal immigration status.  The cases of immigrant victims of spouse, child, and elder abuse provide a potent illustration of what HB 56 will mean in the lives of immigrants abused by their U.S. citizen and lawful permanent resident spouses or parents.  VAWA self-petitioners routinely endure between 1 and 7 years of

---

[50] Deeana Jang et al., *Domestic Violence in Immigrant and Refugee Communities: Asserting the Rights of Battered Women* (1997), available at https://www.ncjrs.gov/App/publications/Abstract.aspx?id=157915.
[51] Ingram et al., *supra* note 17.

23

lawfully present yet undocumented status from the time they file their VAWA self-petition until they receive lawful permanent residency.  Immigrant victims of spouse, child, and elder abuse awaiting case processing and lawful permanent residency will be subject to immigration enforcement mandated by HB 56. Individuals who knowingly provide rental housing, transportation, or other forms of crime victim assistance could be charged criminally for violating Alabama state law.  These barriers to independence will deter women from leaving their abusers, potentially force those who have left their abusers to return, and make it harder for victims to stay outside their abusers' sphere of influence.  This will cause irreparable harm to immigrant women.

A.    **HB 56 Prevents Victims From Achieving Economic Independence By Criminalizing The Solicitation And Performance Of Work By Undocumented Immigrants.**

Undocumented immigrant women who contemplate leaving their abusive spouses or employers often face severe economic constraints. Victims who have access to economic and material resources either directly (housing, food, clothing, or money) or indirectly (legal immigration status, work authorization, job training, childcare, or transportation) are in a better position to leave abusive partners and employers and create a safe and economically secure life for themselves and their

24

children.[52]  Immigrant victims, whose access to these life saving services will be

significantly curtailed by HB 56, are more likely to face the prospect of

abandoning their sole means of support when they leave a violent situation.[53]

If HB 56 is implemented, an immigrant sexual assault victim will be

extremely vulnerable to an abusive employer's coercion, *i.e.*, convincing the victim

that she will not be able to support her children unless she remains in her

employment or returns to it; as well as to an employer's threats to have her

deported if she reports the sexual assault to law enforcement.[54]  Without legal work

authorization and protection from deportation, the victim's sexual assault

perpetrator is free to continue assaulting this immigrant victim and other

individuals in the community.  Similarly, battered immigrant spouses have great

difficulty severing economic dependence on their abusive spouses, particularly

when the abuser has citizenship or legal immigration status in the United States.[55]

Compared with 40 percent of the general population of battered women, 67.1

---

[52] Donna Coker, *Shifting Power for Battered Women: Law, Material Resources and Poor Women of Color,* 33 UNIV. OF DAVIS LAW REVIEW 1009, 1011 (2000), *available at* http://www.law.miami.edu/facadmin/pdf/dcoker/Shifting%20Power%20for%20Battered%20Women.pdf.

[53] Edna Erez & Carolyn Copps Hartley, *Battered Immigrant Women and the Legal System: A Therapeutic Jurisprudence Perspective*, 4(2) WESTERN CRIMINOLOGY REVIEW 155 (2003), *available at* http://wcr.sonoma.edu/v4n2/erezhartley.html.

[54] *See generally* Jessica Mindlin, *Dynamics Of Sexual Assault And The Implications For Immigrant Women*, in EMPOWERING SURVIVORS: LEGAL RIGHTS OF IMMIGRANT VICTIMS OF SEXUAL ASSAULT (Leslye Orloff ed., 2010), *available at* http://iwp.legalmomentum.org/cultural-competency/dynamics-of-violence-against-immigrant-women/1%20dynamics.pdf/view.

[55] Hass, et al., *supra* note 12.

DCACTIVE-15826474.2

percent of battered immigrant women reported that the single greatest barrier to leaving an abusive relationship was a lack of money.[56]

The workforce is already a harrowing place for undocumented immigrant women, who face disproportionate levels of sexual harassment and exploitation. The implementation of HB 56 further exacerbates this situation, and gives employers and managers even more leverage to create and maintain hostile, dangerous, and sometimes sexually violent working environments, as well as to underpay their employees. The implementation of HB 56 will create further financial constraints on immigrant women seeking to leave their abusers, since it criminalizes the mere act of solicitation and performance of work by undocumented immigrants.[57] This law undermines the ability of police and prosecutors to secure assistance from immigrant victims whose employers or family members perpetrated sexual assault, human trafficking, domestic abuse, and other violent crimes. Victims awaiting awards of legal status from DHS will be forced to return to their abusers or face starvation and homelessness with no ability to work while their immigration case is pending. Subjecting immigrant women to criminal penalties for merely seeking and performing work will create a perverse incentive for abusive employers to target them as employees, thus placing them in

---

[56] Dutton et al., *supra* note 14.
[57] HB 56 § 11.

26

further danger of exploitation.  HB 56 will make all immigrant women in the

workforce more susceptible to quid pro quo sexual harassment and retaliation.

**B.     HB 56 Creates Housing Barriers By Criminalizing The Act Of Knowingly Entering Into A Rental Agreement With An Undocumented Person.**

Obtaining safe, secure, and permanent housing is crucial to a battered

immigrant's ability to successfully escape domestic violence.[58]  After leaving their

abusers, immigrant women in particular face a real danger of becoming homeless,

and are frequently forced into unsafe and overcrowded apartments.[59]  Without

viable housing options, victims often return to their abusers.[60]  Congress has

recognized the special housing barriers encountered by undocumented battered

women, and has singled out this group as specially deserving of federal housing

benefits.[61]  The Department of Housing and Urban Development (HUD) has

specifically addressed the complex needs of battered immigrants, child abuse

victims and other immigrant crime victims (*e.g.*, sexual assault and human

trafficking) at risk of becoming homeless.  Under federal law, immigrant victims

---

[58] In some regions of the country, approximately one-third of all homeless women are homeless due to domestic violence.  *Domestic Violence and Housing*, NATIONAL COALITION AGAINST DOMESTIC VIOLENCE, *available at* http://www.ncadv.org/files/Housing_.pdf.

[59] COALITION FOR IMMIGRANT AND REFUGEE RIGHTS AND SERVICES, A Needs Assessment of Undocumented Women (1990), *available at* http://endabuse.org/programs/display.php3?DocID=125.

[60] *Domestic Violence and Housing*, *supra* note 58.

[61] Leslye E. Orloff, *Lifesaving Welfare Safety Net Access for Battered Immigrant Women and Children: Accomplishments and Next Steps*, 7 WM. & MARY J. OF WOMEN & L. 597, 614-21 (2001); § 401(c) of PRWORA 1996; 8 U.S.C. § 1611(c).

are federally authorized to receive access to emergency shelter and transitional housing for up to 2 years.[62]  HB 56 would make this important housing safety net for immigrant victims and their children disappear.

Section 13 of HB 56 adds a significant obstacle for battered immigrant women seeking reliable housing by creating criminal sanctions for persons who knowingly enter into a rental agreement with an undocumented person.  While domestic violence programs, such as ACADV member agencies, provide emergency shelter and some limited transitional housing, long term housing is a necessity for victims and their children.  A comprehensive study released in 2005 found that one out of every four homeless women is homeless because of violence committed against her.[63]  In addition, both the U.S. Department of Justice and the HUD have deemed access to housing as a crucial life-saving service necessary to protect the health and safety of victims of domestic abuse.[64]  HB 56, therefore,

---

[62] Andrew Cuomo, *Letter to HUD Recipients*, U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT (Jan. 19, 2001), *available at* http://www.vawnet.org/Assoc_Files_VAWnet/ImmigrantAccess.pdf; OFFICE OF CIVIL RIGHTS, DEPARTMENT OF HEALTH AND HUMAN SERVICES, *Access to HHS Funded Services for Immigrant Survivors of Domestic Violence* (Jan. 19, 2001), *available at* http://www.hhs.gov/ocr/civilrights/resources/specialtopics/origin/domesticviolencefactsheet.html.

[63] Jana L. Jasinski et al., U.S. DEPT. OF JUSTICE NATIONAL INSTITUTE OF JUSTICE, *The Experience of Violence in the Lives of Homeless Women: A Research Report* 2, 65 (2005), *available at* http://www.ncjrs.gov/pdffiles1/nij/grants/211976.pdf.

[64] U.S. DEPT. OF JUSTICE, *Final Specification of Community Programs Necessary for Protection of Life or Safety Under Welfare Reform Legislation*, A.G. Order No. 2353-2001, 66 Fed. Reg. 3613 (Jan. 16, 2001); Cuomo, *supra* note 62.

DCACTIVE-15826474.2

threatens the lives of undocumented survivors of domestic abuse, by criminalizing

their search for housing outside the reach of their abusers.

## V.    HB 56 Unfairly Subjects Providers Attempting To Assist Victims To Criminal Prosecution.

The ability to seek help is vital to a victim's survival and ability to avoid or

resist violence.  Research indicates that support from family, friends, legal

professionals, other professional help, and the community at large is essential to a

victim's readjustment and recovery.[65]  Outside help, such as informal help from

family and friends, or formal help from organizations like domestic violence

shelters and the courts, has been found to be an effective means of helping victims

escape violence.[66]  Immigrant victims, however, are often reluctant to seek help

because of a lack of understanding of their legal rights, and their undocumented

status.  Indeed, a study of Caucasian, African-American, and Latina women living

in a shelter found that Latinas were the least likely of all groups to contact a friend

or social service agency for help.[67]  An immigrant woman's ability to seek help is

further hindered by language differences, discrimination, and the manner in which

immigration status limits mobility and transportation options for immigrant

---

[65] *See* Millie C. Astin et al., *Post-traumatic Stress Disorder Among Battered Women: Risk and Resiliency Factors*, 8 VIOLENCE AND VICTIMS 24 (1993); Cheribeth Tan et al., The *Role of Social Support in the Lives of Women Exiting Domestic Violence Shelters: An Experimental Study*, 10 J. OF INTERPERSONAL VIOLENCE 447-48 (1995).

[66] *See* Lee Bowker, *Marital Rape: A Distinct Syndrome?*, 64 SOCIAL CASEWORK: THE J. OF CONTEMP. SOCIAL WORK 347-52 (1983).

[67] Dutton et al., *supra* note 14.

DCACTIVE-15826474.2

victims.[68]  Immigrant victims who overcome formidable obstacles to seek help

from shelters, victim advocates, attorneys, police and courts have suffered

significant levels of traumatic incidents.[69]

HB 56 adds even more obstacles to an immigrant woman's ability to obtain

outside help by broadly criminalizing the assistance of friends, family, and victim

services providers.  Specifically, section 13 of HB 56 imposes criminal punishment

for: (1) concealing, harboring, or shielding an alien from detection; (2)

encouraging or inducing an alien to come to or reside in Alabama; and (3)

transporting an alien.[70]  While certain domestic violence, sexual assault, and

trafficking victim support services funded through specific federal grants and

programs are exempt from the criminal penalties for providing a limited range of

assistance to undocumented victims, there are other crucial victims services funded

through local, private, and federal funding streams that are not exempt from HB

56's criminal penalties.[71]  These programs include a range of victim services that

the federal government has deemed must be available to all persons without regard

---

[68] *Id.*

[69] *Id.*

[70] HB 56 § 13.

[71] Section 13(e) of HB 56 exempts "protective services provider[s]" from being criminally punished for the acts described in section 13(a).  Section 3(12) defines a "protective services provider" as "a child protective services worker; adult protective services worker; protective services provider; or provider of services to victims of domestic violence, stalking, sexual assault, or human trafficking that receives federal grants under the Victim of Crimes Act, the Violence Against Women Act, or the Family Violence Prevention and Services Act."

DCACTIVE-15826474.2

to immigration status, such as transitional housing for victims funded through Housing and Urban Development grants, professional counseling and crisis intervention for adult and child victims, federally funded health care, soup kitchens, and thrift stores operated by domestic violence agencies.[72]

Under HB 56, program staff that assist undocumented victims under these non-exempt services will be subject to potential harassment, fines, criminal prosecution, and even incarceration.  Simple "Good Samaritan" acts such as driving a domestic abuse or rape victim to a hospital or shelter or accompanying a victim to court could result in investigation and punishment.  HB 56 also creates a climate in which a domestic violence or sexual assault shelter or a transitional housing program could risk being accused of illegal harboring.[73]  This will no doubt deter the participation of both program staff and of victims, and will effectively bar access to programs that are crucial to ending violence against immigrant women.  The inability to seek help from others without subjecting them to potential criminal prosecution irreparably harms immigrant victims, and the Court should enjoin the enforcement of HB 56.

---

[72] 66 Fed. Reg. at 3613, *supra* note 3.

[73] The harboring provisions in HB 56 place transitional housing programs that are federally required to serve immigrant victims in the position of having to comply with two conflicting sets of state and federal laws.  Housing programs that turn away immigrant victims as a result of HB 56 would be charged with violation of federal fair housing laws.  Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601 et. seq.; 42 U.S.C. § 3602(b).

DCACTIVE-15826474.2

## CONCLUSION

If the requested injunction is not granted, Alabama HB 56 will unravel years of federally-mandated protections for immigrant women, enacted to ensure immigrant women and their children have access to necessary immigration and health and welfare benefits and to encourage reporting of crimes and abuse.  It will create a climate of fear that will deter immigrant women from leaving their abusers, let alone from affirmatively contacting law enforcement, seeking immigration benefits, or taking refuge at a women's shelter.  The law will chill the exercise of legal rights and cut off immigrant women and their children from federally-funded services that protect their life and safety.  It will cause irreparable harm to the already difficult plight of immigrant victims and their children, and should be enjoined by this Court.

Dated: August 5, 2011                          Respectfully submitted,

**/s Klari Bauer Tedrow**
Attorney at Law
Bar Number: ASB-5015-W81K
4 Office Park Cir, Suite 214
Birmingham, AL 35223-2538
Tel: (205) 871-8084
Fax: (205) 871-8014
E-mail: ktedrow@usimmigrant.net

Steven P. Rice*
Thy B. Bui*
CROWELL & MORING LLP
3 Park Plaza, 20th Floor
Irvine, CA 92614

32

Tel: (949) 263-8400
Fax: (949) 263-8414
E-mail: srice@crowell.com
        tbui@crowell.com

Attorneys for *Amicus Curiae*
ALABAMA COALITION AGAINST
DOMESTIC VIOLENCE

* Admitted *Pro hac vice*

33

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following participants:

Eric J Artrip
artrip@watsonmckinney.com

James W Davis
jimdavis@ago.state.al.us

Vikram Badrinath
vbadrinath@vkblaw.com

Katherine Desormeau
kdesormeau@aclu.org

Mary Catherine Bauer
mary.bauer@splcenter.org

Prim Formby Escalona
pescalona@ago.state.al.us

James U Blacksher
jblacksher@ns.sympatico.ca

Misty S Fairbanks
mfairbanks@ago.state.al.us

Tanya Broder
broder@nilc.org

Margaret L Fleming
mfleming@ago.state.al.us

Samuel J Brooke
sam.brooke@splcenter.org

J Cecil Gardner
jcg@thegardnerfirm.com

J R Brooks
jrb@lfsp.com

Lee Gelernt
lgelernt@aclu.org

Taylor P Brooks
tpb@lanierford.com

David Gespass
gandjlaw.court@gmail.com

Ben E Bruner
brunerlawfirm@gmail.com

Martha L Gomez
mgomez@maldef.org

Central Alabama Fair Housing Center
fcooper@cafhc.org

Omar Jadwat
ojadwat@aclu.org

Shiu-Ming Cheer
cheer@nilc.org

Linton Joaquin
joaquin@nilc.org

1

Jessica Devlin Karp
jkarp@ndlon.org

Melissa S Keaney
keaney@nilc.org

Michelle Lapointe
michelle.lapointe@splcenter.org

Sin Yen Ling
sinyenL@asianlawcaucus.org

Foster S Maer
fmaer@latinojustice.org

Rebekah Keith McKinney
mckinney@watsonmckinney.com

Vivek Mittal
mittal@nilc.org

Elora Mukherjee
emukherjee@aclu.org

NAACP Alabama Conference
info@naacpalabama.org

National Fair Housing Alliance,
Inc.
shanna1016@aol.com

John C Neiman, Jr
JNeiman@ago.state.al.us

Erin Emi Oshiro
eoshiro@advancingequality.org

William G Parker, Jr
wparker@ago.state.al.us

Amy Pedersen
apedersen@maldef.org

Miguel A Perez-Vargas
perezvargasmiguel@gmail.com

C Lee Reeves , II
lee.reeves@usdoj.gov

Roger L Rice
rlr@shore.net

Sigfredo Rubio
frubio@rubiofirm.com

David I Schoen
DSchoen593@aol.com

Ghita R Schwarz
gschwarz@latinojustice.org

Andre Segura
asegura@aclu.org

Diana S Sen
dsen@latinojustice.org

Winfield J Sinclair
wsinclair@ago.state.al.us

South Alabama Center for Fair
Housing
tfbettis@sacfh.org

G Brian Spears
bspears@mindspring.com

Thomas J Spina
tommyspina@bellsouth.net

DCACTIVE-15826474.2

Edward Still
still@votelaw.com

Kenneth J Sugarman
irp_ks@aclu.org

Donald B Sweeney , Jr
dsweeney@babc.com

Michael Kt Tan
mtan@aclu.org

Klari B Tedrow
ktedrow@usimmigrant.net

Naomi Tsu
naomi.tsu@splcenter.org

Karen C Tumlin
tumlin@nilc.org

Andrew H Turner
andrew.turner@splcenter.org

Victor G Viramontes
vviramontes@maldef.org

Cecilia Wang
cwang@aclu.org

Herman Watson, Jr
watson@watsonmckinney.com

Daniel Werner
daniel.werner@splcenter.org

DCACTIVE-15826474.2

I also hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

Jamie L Crook
1225 19th Street, NW, Ste. 600
Washington, DC 20036

Stephen M Dane
1225 19th Street NW, Ste. 600
Washington, DC 20036

Katherine Anne Gillespie
1225 19th Street, NW, Ste. 600
Washington, DC 20036

Nina Perales
Mexican American Legal Defense And Educational Fund
110 Broadway, Suite 300
San Antonio, TX 78205

Dated: August 9, 2011                    Respectfully submitted,

                                         **/s Klari Bauer Tedrow**
                                         Attorney at Law
                                         Bar Number: ASB-5015-W81K
                                         4 Office Park Cir, Suite 214
                                         Birmingham, AL 35223-2538
                                         Tel: (205) 871-8084
                                         Fax: (205) 871-8014
                                         E-mail: ktedrow@usimmigrant.net

DCACTIVE-15826474.2